**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:14CV00093-RLV**

| | |
|---|---|
| **HICKORY SPRINGS** | ) |
| **MANUFACTURING COMPANY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     <u>**MEMORANDUM and ORDER**</u> |
| | ) |
| **R&D PLASTICS OF HICKORY, LTD.** | ) |
| **JAKKS SALES CORPORATION** | ) |
| **JAKKS PACIFIC, INC.** | ) |
| **MAUI, INC.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Failure

to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Alternatively, the

Defendants suggest that this motion can be converted to one for summary judgment under

Federal Rule of Civil Procedure 56. Additionally, the Plaintiff moves to dismiss Defendant

R&D's counterclaims for failure to state a claim pursuant to Rule 12(b)(6).

## I.     PROCEDURAL BACKGROUND AND FACTS

### A.  THE PATENT APPLICATION HISTORY

Hickory Springs Manufacturing ("HSM") is a privately held company headquartered in

Hickory, North Carolina. (Doc. 15 at ¶ 2). On June 10, 2011, HSM filed a provisional patent

application for a flotation device arguing that it possesses the advantages of a lateral curvature,

minimal water resistance, and increased durability, among other benefits. (Doc. 15-1 at 1:6-8,

1:16-42). On June 11, 2012, HSM timely filed a utility patent application claiming priority to

the provisional patent application. (Doc. 15-1 at 1). HSM also submitted 22 proposed claims for

the United States Patent and Trademark Office ("USPTO") to review. *Id*. at 1. The patent specification included in the application described the ASTM C 1427[1] standard for "flexible cellular organic polymeric material." (Doc. 15-1).[2]

On October 16, 2013, the USPTO issued an action rejecting then claim 1 "as being anticipated by D'Luzansky et al. (US 5,275,860)." (Doc. 29-2 at 2). The Examiner also rejected then claim 2 as being dependent on claim 1, but suggested that claim 2 "would be allowable if rewritten in independent form including all of the limitations of the base claim." *Id*. at 3. The Examiner further rejected the then claims 3-14 as being anticipated by D'Luzansky et al., but allowed the then claims 15-22, which dealt with a method of manufacturing a flotation device. *Id*. at 2. HSM amended its patent application by rewriting claim 2 to include all of the features of claim 1 and cancelling claims 3-14. *Id*. at 5. HSM also submitted an Information Disclosure Statement which included ASTM C 1427. (Doc. 29-3 at 2). On April 28, 2014, the USPTO issued a Notice of Allowance for claims 2 and 15-22, which were renumbered as 1-9. (Doc. 29-7 at 2). The Examiner included a copy of HSM's Information Disclosure Statement, and noted that "all references were considered except where lined through," indicating that he considered the ASTM C 1427 standard, as well as D'Luzansky et al., among other references. *Id*. at 8-9. On June 10, 2014, the USPTO issued United States Patent No. 8,747,173 (the "173 Patent") for a flotation device. (Doc. 15, ¶16).

---

[1] "ASTM is an international standards organization that develops and publishes voluntary consensus technical standards for a wide range of materials, products, systems, and services." (Doc. 17 at 3); *see generally*, http://www.astm.org/ABOUT/overview.html.

[2] "The flexibility of the flotation device may be tested according to standards devised by ASTM International. ASTM C 1427 defines 'flexible cellular' as a flexible cellular organic polymeric material that will not rupture within 60 seconds when a specimen with dimensions of 8 inches by 1 inch by 1 inch (200 mm by 25 mm by 25 mm) is bent around a 1 inch (25 mm) diameter mandrel at a uniform rate of one lap in 5 seconds in the form of a helix at a temperature between 65 and 85 degrees Fahrenheit (18 and 29 degrees Celsius)." (Doc. 15-1).

## B. THE LAWSUIT

While the 173 Patent was pending, HSM's subsidiary began manufacturing and selling the "Inno-Wave Swim Raft", a flotation device that embodies the patent. (*See* Doc. 15, ¶ 19). R&D Plastics of Hickory ("R&D") manufactures a foam kickboard marketed as the "Maui Kickboard." *Id*. at ¶ 20. According to Defendants, the Maui Kickboard is manufactured via two separate and distinct processes. (Doc. 27-2 at ¶ 5, 6, and 9). Foam is extruded through a die first, and then a profile shape is imparted onto the foam afterwards via a roller. *Id*. On February 25, 2014, HSM wrote to R&D that HSM believed that the Maui Kickboard incorporated HSM technology that was the subject of a pending patent. (Doc. 36-2). The February 25 letter also accused R&D of misappropriating trade secrets and hiring a former HSM employee in violation of a non-competition agreement entered into by that employee. *Id*. On June 3, 2014, HSM wrote to R&D that the United States Patent and Trademark Office had allowed claims from its patent application and that the patent was to issue soon. *Id*. at ¶22. On June 13, 2014, HSM instituted the instant action by filing a Complaint for Patent Infringement against R&D, alleging that "R&D Plastics makes, uses, sells, and/or offers for sale in the United States products that incorporate the invention claimed in the 173 Patent." (Doc. 1). On July 25, 2014, HSM filed a First Amended Complaint for Patent Infringement which named R&D, Jakks Pacific, Jakks Sales, and Maui, Inc. (R&D's customers) as Defendants. (Doc. 15). The Amended Complaint identifies the Maui Kickboard as the product accused of infringing the 173 Patent. (Doc. 15 ¶11). All Defendants have moved to dismiss the instant action for failure to state a claim.

On September 5, 2014, R&D filed four counterclaims against HSM alleging: (1) unfair and deceptive acts and practices in trade or commerce; (2) interference with prospective

advantage; (3) libel and defamation; and (4) bad faith litigation. (Doc. 28 at 2-5). HSM has filed a Motion to Dismiss all counterclaims under Rule 12(b)(6). (Doc. 35).

### C. CLAIMS OF THE 173 PATENT

Claim 1 of the issued 173 Patent is an independent apparatus claim, which states:

> 1.  A flotation device for aiding a swimmer in a body of water, the flotation device comprising:
>
> > A body formed from an extruded foam and comprising:
> >
> > A top surface,
> >
> > A bottom surface,
> >
> > A first side rail,
> >
> > A second side rail,
> >
> > A leading lateral surface, and
> >
> > A trailing lateral surface,
>
> And wherein the extruded foam is a flexible cellular foam, wherein the extruded foam is a flexible cellular organic polymeric material configured to not rupture within 60 seconds when a specimen of the flexible cellular organic polymeric material with dimensions of 8 inches by 1 inch by 1 inch is bent around a 1 inch diameter mandrel at a uniform rate of one lap in 5 seconds in the form of a helix at a temperature between 65 and 85 degrees Fahrenheit.

173 Patent at 8:8-26 (Doc. 15-1).

Claim 2 of the 173 Patent is an independent claim for a method of manufacturing a flotation device that Claims 3-9 depend on. (Doc. 15-1). Claim 2 provides:

2.      A method of manufacturing a flotation device comprising:

Extruding a flexible cellular polyethylene foam through a die, wherein the shape of the die corresponds to the lateral shape of the flotation device when taken perpendicularly to a longitudinal dimension of the flotation device and defines a lateral curvature when viewed in cross section that extends across a top surface and a bottom surface of the flotation device, and

Feeding the extruded flexible cellular polyethylene foam through a rotary die cutter to thereby create the flotation device comprising:

    The top surface,

    The bottom surface,

    A first side rail,

    A second side rail,

    A leading lateral surface, and

    A trailing lateral surface,

Wherein the lateral curvature that extends across the top surface is shaped so as to be reciprocal of at least part of the lateral curvature that extends across the bottom surface,

Wherein the flotation device is configured to have a plurality of curves that extend across the top surface and bottom surface of the flotation device, and

    Wherein the plurality of curves includes at least a central curve.

173 Patent at 8:27-9:27 (Doc. 15-1).

Since claims 3-9 are dependent upon claim 2, it is not necessary to reproduce them here.

## II.     STANDARD OF REVIEW

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss pursuant to Rule 12(b)(6), this Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Although "heightened fact pleading of specifics" is not required for a complaint to survive a motion to dismiss under Rule 12(b)(6), the allegations must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In considering the plausibility of a claim, the Court must "draw on its judicial experience and common sense" to determine whether the well-pleaded facts of the complaint "permit the Court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must disregard conclusory statements unsupported by factual allegations, but "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d).  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.  *Id*.  Under Rule 12(d), a court has broad discretion to refuse to accept the extra-pleading materials and resolve the motion solely on the basis of the pleading itself.  *Navajo Nation v. Urban Outfitters*, 935 F.Supp.2d 1147, 1157 (D.N.M. 2013)

(citing *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998)). No conversion is required, however, when the Court considers information that is subject to proper judicial notice or exhibits attached to the complaint, unless their authenticity is questioned. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012). *See also Navajo Nation*, 935 F.Supp.2d at 1157 (citing *Rose v. Utah State Bar*, 471 Fed.Appx. 818, 820 (10th Cir. 2012) (unpublished opinion) (no conversion required where court takes judicial notice of its own files and records and facts that are matter of public record)). Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Discovery does not need to be complete before a case is dismissed on summary judgment. However, "summary judgment is only proper if the non-movant has had adequate time for discovery." *Pony Computer, Inc. v. Equus Computer Systems of Missouri, Inc.,* 162 F.3d 991, 996 (8th Cir. 1998).

## III.    DISCUSSION

### A.  HSM's COMPLAINT

#### 1.  In order to consider matters outside the pleadings, the Court must convert the motion to one for summary judgment.

The Court may take judicial notice of facts that are not subject to reasonable dispute. Fed. R. Evid. 201. On a 12(b)(6) motion the Court takes judicial notice of the patent itself. But

Defendants go further in arguing that the Court should also take notice of the patent's file history[3], as well as photographs submitted by Defendants that purport to show the Maui Kickboard's manufacturing process, the authenticity of which is questioned by HSM. Defendants' arguments are more accurately directed at traditional summary judgment standards. Therefore, this Court considers it more procedurally appropriate to convert the Defendants' Motion to Dismiss into a motion for summary judgment. In a motion for summary judgment, the Court can review all of the documents that have been submitted by the parties to this point, including but not limited to the patent, the patent's file wrapper, and the photographs submitted by Defendants. In a motion for summary judgment, the burden of proof is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to judgment in its favor. *Estate of Kimmell v. Seven Up Bottling Co. of Elkton, Inc.*, 993 F.2d 410, 412 (4th Cir. 1993). As explained herein, this Court holds that this record contains genuine issues as to material facts and that summary judgment is therefore inappropriate at this stage.[4]

## 2. Prosecution history estoppel does not apply in this case because this case does not involve the doctrine of equivalents.

"Prosecution history estoppel requires that the claims of a patent be interpreted in light of the proceedings in the Patent and Trademark Office during the application process." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). "When, however, the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to the rejection, he may not argue that the surrendered territory comprised unforeseen

---

[3] "[C]herry-picked portions of the USPTO's records" are necessarily subject to "reasonable dispute and thus not best suited for judicial notice." *Navajo Nation*, 935 F.Supp.2d at 1157.

[4] The Court does recognize, however, that summary judgment may be appropriate after discovery and claim construction have been concluded.

subject matter that should be deemed equivalent to the literal claims of the issued patent." *Id*. at 733-34. Prosecution history estoppel is relevant in cases involving the doctrine of equivalents. *Id*. In this case, however, HSM alleges direct infringement, not infringement under the doctrine of equivalents. As such, prosecution history estoppel does not apply.

### 3. There are genuine issues of material fact regarding the validity of the 173 Patent.

Defendants assert that the 173 Patent is invalid because of anticipation and obviousness. Under 35 U.S.C. §282(a), "a patent is presumed valid." 35 U.S.C. §282(a). "The burden of establishing the invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id*. The presumption that the 173 Patent is valid can be rebutted only upon a showing of invalidity by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S.Ct. 2238, 2242 (2011). "It may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered. Importantly, the question whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012).

#### a. Anticipation of the 173 Patent is a genuine issue of material fact.

Defendants argue that claim 1 of the 173 Patent is anticipated by the ASTM C 1427 definition for "flexible cellular" and the elements of a flotation device articulated in D'Luzansky, et al., (US 5,275,860). Under 35 U.S.C. §102(b), a person shall be entitled to a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for

patent in the United States…." 35 U.S.C. §102(b). A single prior art reference anticipates a claimed invention if it discloses each and every claim element. *Structural Rubber Prod. Co. v. Park Rubber Co.,* 749 F.2d 707 (Fed. Cir. 1984).

In this case, the Examiner considered both D'Luzansky and the ASTM standard. HSM provided the Examiner with the ASTM standard and even highlighted the definition of "flexible cellular." (Doc. 29-5). On March 31, 2014, the Examiner signed the Information Disclosure Statement and noted that "all references [were] considered except where lined through," indicating consideration of both the ASTM and D'Luzansky. (Doc. 29-7 at 8-9 (signed by Examiner Lars Olson on Mar. 31, 2014)).

Defendants further argue that HSM misled the Examiner as to the date of the ASTM standard by providing only a retrieval date that was within the one year grace period, thus disguising the standard's relevance as prior art. Such an argument relies on speculation that the Examiner unreasonably conflated "retrieval date" and "publication date" without looking into the ASTM standard himself. This speculation does not overcome the fact that the Examiner explicitly noted that he considered the ASTM standard. Furthermore, the 173 Patent was filed prior to the Leahy-Smith America Invents Act ("AIA"), which was passed on September 16, 2011. The AIA reformed 35 U.S.C. §102 to add the one year grace period that was not present in the statute before. The Examiner therefore reviewed the 173 Patent application before the one year grace period even existed, making the difference between the retrieval date and the publication date irrelevant. Because the Examiner reviewed the very documents that Defendants are relying on to claim invalidity, the Defendants have not shown that no reasonable jury could find that the 173 Patent is not anticipated.

**b. The obviousness of the 173 Patent is a genuine issue of material fact.**

Defendants argue that claim 1 of the 173 Patent is invalid for obviousness. 35 U.S.C. §103(a) states that the issuance of a patent is forbidden when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. §103(a). In determining whether an issued patent is invalid for obviousness, the Court considers the following factual findings: (1) the scope and content of prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness, including "commercial success, satisfaction of a long felt but unsolved need, failure of others, praise, unexpected results, and copying." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1069 (Fed. Cir. 2012), *cert. denied*, 133 S.Ct. 933 (U.S. 2013) (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966)). Furthermore, "a patent composed of several elements is not proved obvious merely be demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 418 (2007).[5] "A party seeking to invalidate a patent as obvious must 'demonstrate' by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention…" *In re Cyclobenzaprine*, 676 F.3d at 1069.

---

[5] *See also Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("A claim to a mechanical device usually recites a combination of several elements, most or all of which may be separately known."); *Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 1556 n.3 (Fed. Cir. 1985) ("Only God works from nothing. Men must work with old elements.").

Once again, the fact that the patent is presumed valid and the Examiner reviewed the documents that Defendants rely on makes summary judgment at this early stage inappropriate. But even if that were not the case, there are other factual findings that need to be provided. Defendants provide some evidence of the scope and content of prior art, but summary judgement requires undisputed evidence regarding additional issues such as the level of ordinary skill in the art, *Graham's* objective considerations of nonobviousness, or a reason to combine the teaching of the prior art references. Defendants rely on *Sinclair & Carroll Co. v. Interchemical Corp.*[6] to argue that Plaintiff's combination was not ingenious and would have been obvious to a person of ordinary skill in the art, but this question is more properly in the province of a jury. 325 U.S. 327, 335 (1945). There is not enough evidence for this Court to now conclude that there is no genuine issue of material fact with respect to the obviousness of claim 1 of the 173 Patent.

  **4. There is a genuine issue of material fact regarding infringement of the 173 Patent.**

Infringement analysis of a patent requires a two-step process. The first is claim construction, which is a question of law. The second is comparison of the claims to the accused device, which is a question of fact that requires a determination that every claim limitation or its equivalent be found in the accused device. *Serio-US Indus., Inc. v. Plastic Recovery Technologies Corp.*, 459 F.3d 1311, 1316 (Fed. Cir. 2006). Therefore, infringement is usually a question of fact. *See MSA Products, Inc. v. Nifty Home Products, Inc.*, 883 F.Supp.2d 535 (D.N.J. 2012). Liability for infringement requires only that a single, valid claim be infringed. *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012).

---

[6] "Reading a list and selecting a known compound to meet known requirements" is not ingenious and renders a claim obvious under 35 U.S.C. §103.

"A utility patent is issued for the invention of a new and useful process, machine, manufacture, or composition of matter, or a new and useful improvement thereof." 35 U.S.C. §101. "A design patent is issued for a new, original, and ornamental design embodied in or applied to an article." 35 U.S.C. §171. The 173 Patent is a utility patent. HSM contends that utility patents are treated differently than simpler design patents, and therefore require more extensive discovery beyond the photographs submitted by the Defendants. Defendants contend that the 173 Patent's simplicity makes it more comparable to a design patent and therefore elaborate claim construction is not necessary.

This Court begins by noting that the Rule 12(b)(6) and Rule 56 standards do apply equally to design and utility patents[7], as Defendants argue, but this does not necessarily mean that design and utility patents are treated equally. Defendants' cite many cases where infringement claims on design patents are dismissed based on the strength of photographs alone. Photographs are an adequate means by which to judge infringement in a design patent case because a design patent by definition covers how a product looks. A patented manufacturing process is much more difficult to determine from photographs alone, even if those photographs are authenticated and of adequate size. This Court is not holding that a 12(b)(6) dismissal or summary judgment is inappropriate in all cases involving utility patents, only that it is inappropriate in this case based on the record as it has been developed to this point.[8]

---

[7] *See Colida v. Nokia, Inc.*, 347 F.App'x 568, 569 (Fed. Cir. 2009) ("The decision to grant a motion to dismiss 'is a purely procedural question not pertaining to patent law[.]')" (quoting *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007).

[8] Defendants cite several cases from the Federal Circuit where claims for utility patent infringement were dismissed on 12(b)(6) grounds. In *Ultramercial, Inc. v. Hulu, LLC*, the Federal Circuit held that Ultramercial's patent was directed at the abstract idea of using advertising as a form of currency and therefore did not comprise patentable material. 772 F.3d 709, 715 (Fed. Cir. 2014). In *OIP Technologies, Inc. v. Amazon.com, Inc.*, the Federal Circuit held that "At best, the claims describe the automation of the fundamental economic concept of offer-based price optimization" and were therefore

Defendants argue that HSM should not be allowed to go on a fishing expedition by naming a non-infringing product in order to discover if R&D produces any products that actually infringe. As stated previously, this Court finds that whether the Maui Kickboard does infringe is an issue that is still subject to reasonable dispute. HSM is entitled to reasonable discovery under Rule 56.[9] "Rule 56(d) requires that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Ingle ex rel. Estate of Ingle v. Yelton,* 439 F.3d 191, 195 (4th Cir. 2006). No significant discovery has yet taken place in this action, making the Court especially reluctant to grant summary judgment. HSM requests discovery on factual issues such as R&D's manufacturing process for the accused products, including machines, dies, materials, and processes; inspection of dies utilized by R&D during manufacture; inspection of samples of the accused products; as well as other discovery. This Court agrees that some of this information is necessary before it can be determined if R&D has infringed upon the 173 Patent.

---

too abstract to be patentable under 35 U.S.C. §101. No. 2012-1696, 2015 WL 3622181 at *3 (Fed. Cir. June 11, 2015). While these cases undoubtedly stand for the proposition that a court can dispose of an infringement claim at the pleading stage, this Court finds that this is not the type of case that can be dealt with prior to discovery and claim construction due to the issues of material fact that remain. The claims asserted in the 173 Patent are not "plainly directed to a patent ineligible abstract idea." *Id.* at *4 (J. Mayer, concurring). In none of the cases cited by Defendant did those courts determine that a utility patent was not directly infringed based merely on photographs. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014) (patent was invalid for indefiniteness); *Bender v. LG Electronics U.S.A., Inc.*, No. C09-02114 JF (PVT), 2010 WL 889541 (N.D. Cal. 2010) (dismissed for failure to identify the accused products); *Hewlett-Packard Co. v. Intergraph Corp.*, No. C03-2517 MJJ, 2003 WL 23884794 (N.D. Cal. 2003) (dismissed for failure to identify the accused products); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C09-01531 RS, 2009 WL 2972374 (N.D. Cal. 2009) (claims of indirect infringement dismissed for not including the requisite additional elements).

[9] *See, e.g. Metro Life Ins. Co. v. Bancorp Servs., L.L.C.*, 527 F.3d 1330, 1337 (Fed. Cir. 2008) (district court erred in granting summary judgment where plaintiff was "never afforded a reasonable opportunity to conduct any discovery in the infringement action"); *Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 (Fed. Cir. 2013) (district court abused its discretion in granting competitor's motion for summary judgment of noninfringement without allowing patentee opportunity to review source code).

### B. R&D's COUNTERCLAIMS

On September 5, 2014, R&D filed four counterclaims against Hickory Springs alleging: (1) unfair and deceptive acts and practices in trade or commerce; (2) interference with prospective advantage; (3) libel and defamation; and (4) bad faith litigation. The Court assesses these counterclaims using the 12(b)(6) standard of review.

### 1. R&D's counterclaims are not preempted by federal patent law or precluded by the litigation privilege because R&D adequately pled bad faith.

#### a. R&D's counterclaims are not preempted by federal patent law.

HSM argues that R&D's counterclaims fail to state a claim because "all of Defendant's claims are preempted by federal patent law." (Doc. 36 at 5). According to HSM, R&D cannot bring these counterclaims because federal law upholds a patentee's right "to communicate with potential infringers regarding their patents." *Vesture Corp. v. Thermal Solutions, Inc.,* 284 F.Supp.2d 290, 318 (M.D.N.C. 2003). Because "patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts" it is generally true that federal patent law protects patentees from state law tort liability for attempting to protect their patents. *G.P. Industries, Inc. v. Eran Industries, Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007). However, "a state law tort claim is not preempted by the federal patent law . . . provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." *Dow Chem. Co. v. Exxon Corp.,* 139 F.3d 1470, 1473 (Fed. Cir. 1998). A patentee's actions are only protected in so far as their conduct is in good faith. *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). This means that "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id*.

Bad faith includes both objective and subjective components. *Id.* For the objective component to be met, the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits." *Id.* (quoting *G.P. Indus.,* 500 F.3d at 1374). The subjective component must be established by an actual showing of subjective bad faith on the part of the patentee in enforcing the patent. *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354 (Fed. Cir. 2008).

The accused infringer need only plausibly allege bad faith at the pleading stage, not prove it. *Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1336 (Fed. Cir. 1998). Examples of conduct constituting bad faith include: the patentee having knowledge that the patent is invalid, unenforceable, or not infringed; knowledge on the part of the patentee of invalidating prior art; or baseless infringement accusations even of a valid, enforceable patent. *Zenith Electronics Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1355 (Fed. Cir. 1999); *Blue Rhino Global Sourcing, Inc. v. Well Traveled Imports, Inc.*, 888 F.Supp.2d 718, 722 (M.D.N.C. 2012).

This Court finds that R&D has adequately pled bad faith in this case. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, cited by HSM, stands for the proposition that "communication of accurate information about patent rights, whether by direct notice to potential infringers or by publicity release, does not support a finding of bad faith." 165 F.3d 891, 898 (Fed. Cir. 1998). What R&D has alleged, however, is that HSM's communication about their patent rights was inaccurate, and their allegations baseless. When allegations of infringement are baseless, communication of those allegations is not protected under federal patent law due to the bad faith nature of such communications. *Zenith*, 182 F.3d at 1355.

R&D has provided factual assertions for why HSM's allegations are baseless and made in bad faith, and it is the role of the trier of fact to determine the validity of these factual assertions.

R&D has alleged that HSM threatened R&D with patent infringement before the patent issued or was published to the public.  It is axiomatic that a non-issued patent cannot be infringed.  (Doc. 32-2 at ¶1, 3).  Furthermore, a potential infringer cannot determine likelihood of infringement without review of the claims, specification, or prosecution history.  R&D had access to none of these at the time HSM was sending R&D letters demanding that they cease manufacturing.  R&D has further alleged the HSM's in-house counsel "engage[d] in direct discussions with R&D's President regarding a 'settlement' without knowledge of R&D's counsel…." (Doc. 28 at ¶7(i)).  R&D has alleged that HSM has "accused R&D without a good faith basis on which to conclude that R&D Plastics is, in fact, infringing any claim of the 173 Patent." (Doc. 28 at ¶6).  R&D includes factual assertions for these allegations in its Memo in Support of [its] Motion to Dismiss. (Doc. 27).  Resolution of these issues is for the trier of fact.  R&D has adequately pled bad faith to avoid preemption by federal patent law.

> **b. The litigation privilege does not apply when bad faith has been adequately pled.**

HSM cites *Harris v. NCNB Nat. Bank of N. Carolina* as standing for the proposition that the litigation privilege is an "absolute privilege to communications made both in the course of a pending judicial proceeding and preliminary to a proposed judicial proceeding."  355 S.E. 2d 838, 842-43 (N.C. Ct. App. 1987).  In *Harris* the court made it clear that communications "made in good faith and without actual malice" were protected.  *Id*. at 842.  Where, as here, the counterclaimant has adequately alleged bad faith, the actions of the counterclaim defendant are not protected by the litigation privilege.[10]

---

[10] It should be noted, however, that if the trier of fact were to determine that HSM did in fact act in good faith, then the litigation privilege would shield its communications.

**2. R&D states a claim for unfair trade practices, but does not state a claim for interference with prospective advantage, libel and defamation, or bad faith litigation.**

**a. R&D states a claim for unfair trade practices.**

N.C. Gen. Stat. §75-1.1, North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.G.S. §75-1.1. The primary purpose of the UDTPA is to protect the consuming public by providing "a private cause of action to consumers aggrieved by unfair or deceptive business practices." *Food Lion, Inv. v. Capital Cities/ABC, Inc.,* 194 F.3d 505, 519 (4th Cir. 1999). "Unfair trade practices involving businesses are actionable where they affect the consumer as well, but only when the businesses are competitors or are engaged in commercial dealings with each other." *Id.* at 519-20. The elements of a claim for unfair or deceptive trade practices are: "(1) an unfair or deceptive act or practice by defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff." *White v. Thompson*, 676 S.E.2d 104, 108 (N.C. Ct. App. 2009) aff'd 691 S.E2d 676 (N.C. 2010). An act is deceptive "if it has a tendency or capacity to deceive." *Rahamankhan Tobacco Enterprises Pvt. Ltd. V. Evans MacTavish Agricraft, Inc.*, 989 F.Supp.2d 471, 477 (E.D.N.C. 2013). An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or amounts to an inequitable assertion of …power or position." *Id.* "What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace." *Durling v. King*, 554 S.E.2d 1, 4 (N.C. Ct. App. 2001) (citing *Pan American World Airways, Inc. v. United States*, 371 U.S. 296 (1963)).

HSM argues that R&D's counterclaim for unfair trade practices should be dismissed because R&D has not adequately alleged that HSM's actions affect commerce. HSM cites *Durling v. King*, 554 S.E.2d (employee commission did not affect commerce), *Mountain Land Properties, Inc. v. Lovell*, 2:12-CV-84-MR-DLH, 2014 WL 4542413 (W.D.N.C. Sept. 11, 2014) (deceptive acts regarding a single home loan was not in commerce), and *Stack v. Abbott Labs., Inc.,* 979 F.Supp.2d 658, 668 (M.D.N.C. 2013) (royalties to a cardiologist were not in commerce) as examples where North Carolina courts have ruled against those who would claim unfair trade practices based upon a failure to show that the offending actions affected commerce. The courts' decisions in those cases were fact specific and do not compel this Court to dismiss R&D's counterclaim. In this case, if HSM prevails, R&D would be obliged to cease manufacturing at least one product, and potentially more. This outcome would have an impact on commerce greater than that entailed in the cases that HSM cites. It is also perfectly plausible that this would cause a concrete injury to R&D Plastics. Commerce is affected when the case involves the sale of a product or business, or the marketing of the same to the public. *Compton v. Kirby*, 577 S.E.2d 905, 917 (N.C. Ct. App. 2003). Since HSM demanded that R&D stop producing and marketing to the public R&D has adequately pled that HSM's actions affect commerce. Accordingly, the counterclaim for unfair trade practices is not dismissed for failure to state a claim.

**b. R&D fails to state a claim for interference with prospective business advantage.**

To state a claim for tortious interference with prospective advantage, a claimant must allege: (1) the accused party induced a third party to refrain from entering into a contract with the claimant, (2) without justification, and (3) the contract would have ensued but for the accused party's interference. *Mkt. Choice, Inc. v. New England Coffee Co.*, 5:08-CV-90, 2009 WL

2590651, at *8 (W.D.N.C. Aug. 18, 2009). If a party fails to allege facts showing that a contract would have ensued "but for" the actions of the defendant, its claim fails. *Id*. at 8.

HSM seeks to dismiss this claim for two reasons: (1) Defendant does not allege a contract would have ensued "but for" Hickory Springs' actions; and (2) Defendant does not allege that Hickory Springs acted without justification because Hickory Springs' actions are justified as business competition. (Doc. 36 at 9-10). R&D successfully alleges a lack of justification through their well-pled allegations of bad faith. This Court finds, however, that R&D does not plausibly allege that a contract would have ensued "but for" HSM's actions.

R&D identifies the parties to the prospective contract as R&D's customers, including Jakks Pacific, Inc., Jakks Sales Corporation, and Maui, Inc., but nowhere in R&D's counterclaim does it plausibly allege that HSM's actions interfered with a prospective contract. The customers that R&D names were already contracting with R&D and continue to do so. R&D does not point to any facts that the customers R&D names failed to enter into a contract with R&D because of HSM's patent infringement claims. R&D asserts that paragraphs 7(j) and 7(k) allege this. 7(j) claims that HSM published statements to R&D's customers, but it does not allege that such conduct cost R&D a contract. 7(k) simply alleges actions likely to have been taken by HSM that are unknown to R&D, and therefore is completely speculative. These statements in the counterclaim are not enough to satisfy plausibility standards under *Twombly* and *Iqbal* and accordingly the claim for interference with prospective business advantage should be dismissed. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 661.

### c. R&D fails to state a claim for libel and defamation.

To state a claim for defamation, a plaintiff must allege that (1) the accused party made false and defamatory statements of or concerning the plaintiff, (2) which were published to a

third person, (3) causing injury to the plaintiff's reputation. *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E2d 778, 783 (N.C. Ct. App. 2004) (quoting *Tyson v. L'Eggs Products, Inc.,* 351 S.E.2d 834, 840 (N.C. Ct. App. 1987)). "Merely referring to statements made by 'Defendants' to 'third parties' or 'customers' generally….is inadequate to state a claim for defamation." *Diagnostic Devices, Inc. v. Pharma Supply, Inc.*, No. 3:08-CV-149-RJC-DSC, 2009 WL 3633888 at \*13 (W.D.N.C. Oct. 30, 2009). In order to constitute defamation *per se*, "defamatory words must be susceptible of one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided." *Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. Ct. App. 2002). *See also Pierce v. Atl. Grp., Inc.,* 724 S.E.2d 568, 579 (N.C. Ct. App. 2012), review denied, 731 S.E.2d 413 (N.C. 2012).

"Businesses do not have personalities that are hurt so intangibly….[C]ourts should be very cautious about labeling as defamation *per se* comments made about a corporation or its products." *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1084 (W.D. Ky. 1995). Allegations of patent infringement are not the type of statements that would constitute defamation *per se*. *Id*. at 1084. R&D contends that its claims are different because HSM's allegations came before the patent was issued and because the patent is invalid. That does not change the nature of the claims, for the claim still concerns "allegations of patent infringement." "Among business people, patents are known to be complicated and in infringement issues even more so. The statement by one party that another is infringing does not carry an intrinsic moral or business turpitude." *Id*. at 1084. This Court agrees. Similarly, this Court finds that HSM's accusations of trade secret misappropriation and employment of an individual under a non-compete contract do not rise to the high standard for defamation *per se*. These are not the types

of statements that the defamation cause of action exists to deter. Accordingly, Defendants' claim for libel and defamation is dismissed.

### d. R&D fails to state a claim for bad faith litigation.

R&D cites several cases that it argues support a cause of action for bad faith litigation, but these cases do not treat bad faith litigation as a separate recognized claim in North Carolina outside of the context of insurance claims. R&D appears to cite 35 U.S.C. §285 as the support for this claim, but 35 U.S.C. §285 states only that "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. §285. Requests under §285 can only be determined after all substantive issues in the case have been resolved and the prevailing party has been determined. *Tech. Innovations, LLC v. Amazon.com, Inc.,* CV 11-690-SLR, 2013 WL 4409462, at *3 (D. Del. Aug. 15, 2013); *see also Catch a Wave, Inc. v. Sirius XM Radio, Inc.,* C 12-05791, 2013 WL 1996134, at *4 (N.D. Cal. May 13, 2013) (attorney fees are to be considered at the end of the case and only by way of a proper motion). To the extent that R&D attempts to treat bad faith litigation as a separate cause of action, its counterclaim is dismissed.

### IV.   CONCLUSION

This Court converts defendants' 12(b)(6) Motion to Dismiss to a Rule 56 Motion for Summary Judgment and finds that (1) Prosecution history estoppel does not apply in this case; (2) There is a genuine issue of material fact with respect to the validity of claim 1 of the '173 patent; and (3) There is a genuine issue of material fact with respect to infringement of claims 2-9. This Court also determines that R&D's counterclaims are not barred by the litigation privilege nor preempted by federal patent law due to allegations of bad faith and further finds that (1) R&D has stated a claim for unfair trade practices at this stage of the proceedings; (2) R&D has

failed to state a claim for interference with prospective advantage; (3) R&D has failed to state a claim for libel and defamation; and (4) R&D has failed to state a claim for bad faith litigation.

## V.    ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint is hereby **DENIED** and that Defendants' alternative Motion for Summary Judgment is **DENIED.**  Plaintiff's Motion to Dismiss R&D's Counterclaims is hereby **DENIED** in part and **GRANTED** in part.

Signed: July 20, 2015

Richard L. Voorhees
United States District Judge